(C.D. 2170)

PERRYMAN, MOJONIER, a/c R. SEWELSON CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 22, 1960)

*Stein & Shostak* (*Richard M. Kozinn* and *Marjorie M. Shostak* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*William J. Vitale, Richard E. FitzGibbon, Henry J. O'Neill,* and *Margaret M. Vallerie*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; MOLLISON, J., concurring

WILSON, Judge: The merchandise in the case at bar consists of certain floor coverings, which were classified for duty under paragraph 1117(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, supplemented by T.D. 51909, under the provision therein for "Floor coverings * * * wholly or in chief value of wool, not specially provided for," valued over 40 cents per square foot, at the rate of 40 per centum ad valorem. Plaintiff claims the merchandise properly dutiable under paragraph 1116(a), as modified by T.D. 51802 and T.D. 51909, *supra*, as "other carpets, rugs, and mats, not made on a power-driven loom," at the rate of 15 cents per square foot, but not less than 22½ per centum ad valorem; or, alternatively, under paragraph 1117(a), as modified by T.D. 51802, *supra*, as "Wilton carpets, rugs, and mats, and carpets,

rugs, and mats of like character or description," valued at more than 40 cents per square foot, at the rate of 30 per centum ad valorem.

The sole issue in this case is whether the rugs at bar are "woven" rugs within the meaning of paragraph 1116(a), *supra*, and whether they are *ejusdem generis* with the carpets, rugs, and mats *eo nomine* provided for therein.

The following pertinent exhibits were received in evidence: Photographs of the rugs here in question (plaintiff's collective exhibit 1 (R. 13)); a sample of the type of rug depicted in plaintiff's collective exhibit 1 (plaintiff's illustrative exhibit 2 (R. 16)); a miniature frame, similar to that on which the rugs at bar were made, upon which the warp and weft backing was stretched (plaintiff's illustrative exhibit 3); a hooking needle, which is used to force the yarn through the cotton backing (plaintiff's illustrative exhibit 4); two balls of wool yarn of the nature of yarn used in the production of merchandise such as that represented by plaintiff's collective exhibit 1 (plaintiff's collective exhibit 5 (R. 23)).

Four witnesses testified on behalf of the plaintiff. The defendant introduced no testimony but, on motion made by the latter, there was incorporated in the record in this case the record in the case of *D. N. & E. Walter & Co., Hoyt, Shepston & Sciaroni* v. *United States*, 43 C.C.P.A. (Customs) 100, C.A.D. 615. (R. 75–89.)

Plaintiff's first witness was Mr. Rupert Sewelson, technical stylist, designer, and manager of the western division of Products of Asia, a company engaged in the importation of various commodities, including rugs, from the Far East (R. 4). This witness had nearly 30 years' experience in the rug and carpet business, involving both domestic and foreign merchandise. He described the involved merchandise as "hooked weaves" and stated that the imported carpetings are "hand made" rugs. The witness testified that the merchandise represented by plaintiff's illustrative exhibit 2, alleged to be of the same general character as the rugs at bar, was of the same weave, construction, and design, and had the same kind of pile as the merchandise represented by plaintiff's collective exhibit 1, which he identified as representing French Savonnerie and Aubusson designs, except that the former had a latex back, added after importation, to prevent the rug from slipping. Mr. Sewelson described the production of rugs such as plaintiff's collective exhibit 1 and illustrative exhibit 2 as follows:

A warp and weft backing—pre-fabricated cotton backing—is pre-fabricated, stretched on a loom or frame. The design is then sketched on this warp and weft backing, or shall we call it a cotton-woven backing. The operator then takes a needle, which is called a hooking needle, threads the yarn through the needle, and then forces the yarn to right angles to the backing, to create a pile of designated heights. The needle is forced back and forth until it covers the area, and it can be done in either direction, a design or without a pattern, until the pile height

of the carpet is formed on the other side of the backing where the operator is working. That creates the pile of the carpet, and the warp—and the cotton warp and weft backing acts as a binder to hold the wool, the pile together. [R. 17.]

The witness was of the opinion that the cotton backing material of the imported rugs was made on a hand loom (R. 18, 36). After demonstrating the production of rugs, such as those at bar, Mr. Sewelson stated that as the hooking needle (plaintiff's illustrative exhibit 4) is forced through the cotton backing, "The yarn is being intertwined * * * in and through and around the threads of the cotton backing," forming the pile (R. 24). The witness defined the term "rug weaving" as:

* * * where two or more fabrics are interlaced or connected with another fabric, which forms the binder, or which may be called the warp and the weft. This fabric applied to the binder or warp and weft creates a pile, which is regulated according to the height, * * *" [R. 31].

Describing the production of a Chinese oriental rug, the witness stated:

* * * A frame is constructed of wood to pre-determine the size of the carpet. Then the weft is pre-fabricated on the frame. Then they commence applying warp threads, to make a selvage or fringe. When two or three inches of that has been produced then the operator will take a yarn and thread it around the warp threads, and cut off the yarn at the right height of pile, and continues with that operation until the carpet is completed. [R. 32.]

Mr. Sewelson further testified that when a hand-hooked woven rug or a hand-woven oriental carpet or Axminster, Savonnerie, or Aubusson rug is placed on the floor, the warp and weft used as a backing material do not show on the surface, but that it is the pile of the carpet which shows and that it is the pile which "has the intrinsic value of the carpet"; that the warp and weft in a hand-woven Axminster, Savonnerie, Aubusson, or oriental rug is a "part of the rug"; that "any backing is part of the rug"; and that the basic fabric in the imported wool rugs is a part of the rug (R. 34–35). The witness stated that orientals, Axminsters, Aubussons, and Savonneries are "hand-woven" rugs and that the rugs represented by plaintiff's collective exhibit 1 are considered in the same class.

Explaining certain differences between oriental, Axminster, Savonnerie, or Aubusson rugs, Mr. Sewelson testified that an Aubusson and a Savonnerie rug are differently woven; that, in orientals, there are different weaves, for example, the knotted type, the twisted pile (R. 39). He further testified that if a thread in a cut pile rug was pulled, only that single thread and not the whole design in this type of weave would be removed, but that in a rug produced as were the rugs at bar, that is, one which does not have a "cut" pile but which has a design with a "loop" pile, which is a continuous yarn, if one

pulled a thread long enough, a portion of the motif or design could be removed, until the end of the yarn is reached (R. 43). He stated that the thread in an Aubusson rug is also continuous—there is no cut pile—and if one pulled a thread, a continuous portion of the design could also be removed (R. 43).

On cross-examination, Mr. Sewelson testified that, in the case of oriental, Axminster, Savonnerie, and Aubusson carpets, some of them are "knotted" by hand—"an actual knot which is tied with the yarn when it is looped around the warp thread" (R. 51)—but that the rugs at bar are not knotted at all, but are merely punched in by forcing the yarn through the base material (R. 46–47). He further stated that the pile threads in some of the rugs covered by paragraph 1116(a), *supra*, were twisted without being knotted, and, in others, they were looped without being knotted, and that an Aubusson carpet, like the rugs at bar, is not knotted (R. 52). The witness considered the imported rugs to be "hand woven" because "the basic part of the carpet," which he stated was the wool pile, "is woven into the backing by hand." He agreed that there is no warp or weft in the pile of a hooked rug, but that the warp and weft is contained in the prefabricated backing (R. 48), stating that such warp and weft acts as a binder to the wool pile, the same as in the case of rugs covered by paragraph 1116(a), *supra* (R. 53).

Plaintiff's second witness, Mr. Hal Albert Williams, west coast representative for an eastern domestic carpet manufacturer, stated that he had been in the carpet business since 1925, in which connection he had handled hooked carpets made in Maine, and that he had had some 23 years' experience with the Philadelphia Carpet Co., including positions as sales manager and sales representative for 11 western states. Mr. Williams testified that he had seen carpets produced, including Wiltons, velvets, the hooked weaves, hand-knotted—"practically all types with the exception I have never seen the Orientals made in the Far East or China"; that plaintiff's illustrative exhibit 2 was produced in the manner testified to by the prior witness. The witness agreed with the definition of "weaving" from the Columbia Encyclopedia, 1950 edition, as referred to in the *Walter & Co.* case, *supra*, namely, "The art of forming a fabric by interlacing at right angles two or more sets of yarn or other materials," and testified that, in his opinion, the rugs imported by him from Peru and the rugs produced by Mr. Sewelson fell within such definition (R. 64–65).

Mr. Williams further testified that the weave of a Savonnerie and Aubusson rug is not of the same type; that an Aubusson is not a knotted rug, whereas a Savonnerie is, but that the designs of the two are similar. He stated that merchandise, such as that represented by plaintiff's collective exhibit 1, is of the same kind as oriental, Ax-

minster, Savonnerie, or Aubusson rugs (R. 67). The witness substantially agreed with the testimony of Mr. Sewelson to the effect that the hooked weave rug using a prefabricated base fabric is composed of a warp and weft; that the Axminster, oriental, Aubusson, or Savonnerie also have a warp and weft; that, in addition to the warp and weft threads, both types have a pile; that the base fabric in all of such rugs is part of the rug itself; that both types are hand-woven rugs; that pulling of a thread from a "cut-pile" woven rug would not remove the whole design, whereas a pulling of a thread in a "looped" rug, such as those at bar, would remove a portion of the design; that, in an Aubusson rug, the pulling of a thread would also remove a portion of the design, since such rug, like those here imported, is of a continuous yarn design (R. 67–70).

Russell S. Thompson, associated with W & J Sloane, San Francisco, Calif., as assistant manager of the carpet department, also testified for the plaintiff. He stated that, from his experience in the industry, he had become familiar with various types of rugs and carpets, including Axminster, oriental, Savonnerie, Aubusson, and hook-woven rugs. He explained that the Savonnerie rug has a pile, but that the Aubusson rug does not have a "pile" (R. 101) but is a flat weave (R. 114) like a tapestry (R. 115); and that the outward appearance of these two rugs is different. Mr. Thompson further testified that, in his opinion, rugs, such as those depicted in collective exhibit 1, are hand-woven hooked rugs (R. 107) because "it's made on a hand loom by hand" (R. 112). On cross-examination, the witness admitted that, in the hooked rug, the warp and weft are not made at the same time that the pattern is inserted, but that, in rugs such as those enumerated in paragraph 1116(a), *supra*, the pattern and the warp and the weft are all done at the same time (R. 116).

Plaintiff's last witness was David B. Jacobson, who, the record discloses, before retiring, had been in the carpet business, either marketing or importation, for a period of 49 years. He testified that, during the course of his employment, he had traveled to China and Japan and there observed the methods of manufacture of hooked rugs and Chinese rugs. It was thereupon stipulated by counsel for the respective parties that if Mr. Jacobson were asked the same questions as the previous witness on both direct and cross-examination, he would give the same answers (R. 119).

The gist of the plaintiff's contention in support of its present claim is that each of the two processes involved in producing the rugs at bar, by which the warp and weft backing is first formed, and by which the "pile" is thereafter inserted into the rugs, meet the definitions of "weaving," as set out in the Encyclopaedia Britannica and in the Columbia Encyclopedia, quoted by our appellate court

in the *Walter & Co.* case, *supra*, as well as the common meaning of the term adopted by the court in that case, in that the imported rugs are formed by interlacing, at right angles, two or more sets or series of yarn or other flexible material, i.e., that into the flexible backing material composed of warp and weft threads, the pile yarn is interlaced, rising vertically and assuming a position at right angles to the surface of the base fabric, formed of warp and weft threads. Plaintiff, in this connection, maintains that the fact that, in the hand-hooked rugs, the process is modified or varied to the extent that the pile is inserted after the formation of the warp and weft of the backing material rather than simultaneously, is immaterial, contending, as heretobefore indicated, that the two processes of forming the rugs at bar conform to the common meaning of the term "weaving."

Our appellate court, in the incorporated case, after an analysis of the methods employed in the production of the rugs enumerated in paragraph 1116(a) of the Tariff Act of 1930, viz, oriental, Axminster, etc., concluded that they were all "woven" and held that said paragraph was intended to be limited to woven articles and that the hooked rugs under consideration in the *Walter & Co.* case, *supra*, were not woven.

In our opinion, the holding of our appellate court in the incorporated case is *stare decisis* of the issue involved in the case at bar. In that case, as in the present case, the hooked rugs there involved were classified under paragraph 1117(c) of the tariff act as floor coverings in chief value of wool, not specially provided for. In both cases, the same claim is advanced, namely, that the rugs were properly classifiable under paragraph 1116(a) of the tariff act as rugs, not made on a power-driven loom. Further, the method of manufacture of the rugs here involved, as well as those under consideration in the *Walter & Co.* case, *supra*, as disclosed by the record in the case at bar, and by that in the incorporated case, is the same (R. 17; R. 101 (incorporated case)).

There has been no showing, in this case, of a commercial meaning for the term "weaving" different from the common meaning. With respect to the common meaning of the term "weaving," the court, in the *Walter & Co.* case, *supra*, quoted from the definition given in the Encyclopaedia Britannica (1942), volume 23, page 445:

The process of weaving consists in interlacing at right angles two or more series of flexible materials, of which the longitudinal are called warp and the transverse weft. * * *

The appellate court, after setting out the above definition of weaving, then stated, page 103:

It follows that the process by which the yarn is hooked into the backing in appellants' rugs cannot properly be considered to be weaving since, even assuming it to be an interlacing, the yarn is not at right angles to either the

warp or the weft threads, but is in the form of a pattern or design. Under such circumstances, we are of the opinion that appellants' rugs are not woven in the sense required by paragraph 1116(a), even though they include, as an element, a woven backing fabric. The language "rugs * * * whether woven as separate carpets, rugs, or mats, * * *" must be construed as being limited to rugs which are *formed by weaving*, rather than as including rugs which comprise a pre-woven part. We think the statement that a rug is woven would ordinarily be understood as meaning that the rug itself is produced by a weaving operation; and it is noted that all the rugs mentioned *eo nomine* in paragraph 1116(a) are woven in that sense. * * * [Italics quoted.]

Hooked rugs, such as those in the case at bar, are manufactured in a manner altogether dissimilar to the method used in manufacturing the rugs enumerated in paragraph 1116(a) of the tariff act under which plaintiff claims. In the manufacture of an oriental rug, as disclosed by the record in the incorporated case, the weaver encircles the warp with yarn and then cuts off the yarn with a sharp instrument and forms the pile (incorporated case, R.103). In the production of a hooked rug, however, the operator does not cut off the yarn each time, as in the case of an oriental (R. 108). After construction of a rug by a hooking process, however, there results a looped surface, and the tops are cut off by a shearing process, producing a cut pile. It appears there are no loops produced in making an oriental-type rug.

Further distinguishing the production of hooked rugs and rugs, such as those enumerated in paragraph 1116(a), *supra*, the record discloses that there is no warp or weft in the pile of a hooked rug (R. 48), but that the warp and weft in such case is contained in the prefabricated backing. In the case of a hooked rug, the warp and weft are not made at the same time that the pattern is inserted (R. 116). The rugs and carpets enumerated in paragraph 1116(a), however, do not utilize a prefabricated backing (incorporated case, R. 124), but, in the manufacture of such rugs, the pattern and the warp and the weft are all done at the same time (R. 116). Further, in the manufacture of hooked rugs, the yarn is not applied to the base fabric in one continuous straight line (incorporated case, R. 51) but, in the manufacture of orientals and other rugs enumerated in paragraph 1116(a), each line is woven straight across before the next row of yarn is inserted. The record also discloses that, unlike the case of orientals, etc., if one were to pull a piece of yarn from a hooked rug, the complete yarn in the particular color pattern could be pulled out. It appears, therefore, that, in the case of orientals and rugs such as those enumerated in paragraph 1116(a), the warp and weft are woven in as part of the rug, whereas, in the case of hooked rugs, the prefabricated backing is an entirely separate feature in the production of such articles. The rugs at bar are not *ejusdem generis* with the rugs enumerated in paragraph 1116(a), a requirement necessary for

classification under that paragraph. As was stated by the appellate court in the *Walter & Co.* case, *supra*, page 103:

* * * however, we are of the opinion that the fact that the instant rugs were formed by hooking yarn into a pre-woven backing, whereas all the rugs provided for *eo nomine* in paragraph 1116(a) were formed by true weaving operations, constitutes such a difference as to preclude classification of the appellants' rugs under that paragraph.

Upon the record before us and for the reasons expressed in the *Walter & Co.* case, *supra*, we hold that the wool hooked rugs here in question are properly dutiable under paragraph 1117(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, supplemented by T.D. 51909, as floor coverings, wholly or in chief value of wool, not specially provided for, valued at more than 40 cents per square foot, at the rate of 40 per centum ad valorem, as classified. The protest herein is overruled.

Judgment will be entered accordingly.

### CONCURRING OPINION

MOLLISON, Judge: It is apparent from the very well-written briefs filed by counsel for the parties in this case that it represents what amounts to a retrial and a reargument of the issue which was presented and decided in the case of *D. N. & E. Walter & Co., Hoyt, Shepston & Sciaroni* v. *United States*, 43 C.C.P.A. (Customs) 100, C.A.D. 615, the record in which was incorporated as part of the record in the instant case. In the present case, plaintiff offered additional evidence which, it is contended, establishes the fact that the hand-hooking method of making rugs, which was the method by which the rugs at bar and those involved in the *Walter & Co.* case were produced, is a species of weaving, and has cited encyclopedic and other authorities as corroborating and supporting that evidence.

On the question of law concerning the scope of the rule of *ejusdem generis* and its application to the provisions of paragraph 1116(a), plaintiff suggests that, aside from the common feature of all being hand-woven, there is little or no similarity among the particular kinds of rugs named in that paragraph which could be considered as establishing the nature and characteristics of the class of rugs intended to be covered by the words of general import which follow the enumeration of the particular kinds of rugs, and that hand-hooked rugs, such as those at bar, are not thereby excluded from classification under the language of that paragraph.

Were the issue before us for the first time, and if it did not appear, as it does, that the evidence and the arguments here made by counsel for the plaintiff were before this and our appellate court when the *Walter & Co.* case was presented (albeit not then so well developed), I should be very much inclined to conclude that hand-hooked rugs

of the kind here involved are entitled to classification under paragraph 1116 (a), *supra*, as plaintiff claims.

However, it seems to me that the record and briefs in this case do not present so changed an aspect to the matter from that which was before the courts in the *Walter & Co.* case as compels a different conclusion, at least at this level of jurisdiction.

For that reason, I concur in the decision and judgment in this case.